OPINION
{¶ 1} Defendant, Perdeathia Gray, appeals from her conviction and sentence for possession of crack cocaine.
 {¶ 2} On April 11, 2002, at 9:00 p.m., Dayton police executed a search warrant at 41 N. Marion Street. As officers approached the front porch of the residence, they noticed a man, who was later identified as Fred Fritz, standing in the doorway and looking out at them. The interior door to the residence was open but the wrought iron storm door was closed. Officer Braun immediately announced the officers' presence by yelling, "Dayton police. Search warrant. Open the door."
 {¶ 3} Mr. Fritz backed-up away from the door and said, "It's the police." He then stepped to his left out of the view of the officers for a second or two, and then reappeared in the doorway. Mr. Fritz said something about a key as he continued backing up away from the door. Concluding that Mr. Fritz was not going to open the door, the officers forced their entry into the residence by prying open the closed storm door.
 {¶ 4} Officer Braun entered first and immediately put Mr. Fritz on the floor. He then continued on to his left, down the hallway to the back bedrooms. Det. House entered the residence after Officer Braun and went to his right. Det. House immediately encountered Defendant sitting on the far end or right side of a loveseat.
 {¶ 5} Det. House saw that Defendant's right hand was concealed under the seat cushion between her right leg and the right armrest of the loveseat. Det. House told Defendant to get on the ground. She then removed her concealed right hand and put it in her lap, smiling at Det. House with what he later called "a sheepish grin."
 {¶ 6} Det. House assisted Defendant to the floor between the loveseat and the coffee table in front of it. He then handcuffed her. Det. House removed the seat cushion from the loveseat where Defendant had been sitting. He discovered three baggies of crack cocaine weighing 29.81 grams. Det. House also discovered a scale, razor blade, several small pieces of crack cocaine and some crumbs or cocaine residue on the coffee table, two feet from where Defendant was seated.
 {¶ 7} At her trial Defendant admitted that she purchased and smoked crack cocaine while at that house, but she denied possessing any of the crack cocaine Det. House found under the cushion of the loveseat. Defendant claimed that she was seated on the left side, not the right side, of the loveseat, and that she did not put the cocaine where the officer found it, underneath the cushion next to the right armrest.
 {¶ 8} Defendant was found guilty of possessing more than twenty-five but less than one hundred grams of crack cocaine, in violation of R.C. 2925.11, following a trial to the court. She was sentenced to three years imprisonment. Defendant timely appealed to this court from her conviction and sentence.
 FIRST ASSIGNMENT OF ERROR {¶ 9} "Appellant's conviction should be reversed because there was insufficient evidence in the record to sustain a guilty verdict."
 SECOND ASSIGNMENT OF ERROR {¶ 10} "The verdict should be reversed because it was against the manifest weight of evidence."
 {¶ 11} Defendant argues that the evidence presented by the State was insufficient to demonstrate that she knowingly possessed the crack cocaine police found underneath the cushion of the loveseat. We disagree.
 {¶ 12} A sufficiency of the evidence argument challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law. State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52. The proper test to apply to such an inquiry is the one set forth in paragraph two of the syllabus of State v. Jenks (1991), 61 Ohio St.3d 259:
 {¶ 13} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."
 {¶ 14} Defendant was found guilty of violating R.C. 2925.11(A) which provides:
 {¶ 15} "No person shall knowingly obtain, possess, or use a controlled substance."
 {¶ 16} "Knowingly" is defined in R.C. 2901.22(B):
 {¶ 17} "A person acts knowingly, regardless of purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 18} "Possess" as defined in R.C. 2925.01(K) means "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found."
 {¶ 19} Possession may consist of actual physical possession of an item, or constructive possession. State v. Wolery (1976),46 Ohio St.2d 316, 329. Constructive possession is shown when an individual is able to exercise dominion or control over an item, whether or not it is within his immediately physical possession. Id. Evidence demonstrating that the accused was in close proximity to readily useable drugs may constitute sufficient circumstantial evidence to support a finding of constructive possession. State v. Barnett (Sept. 20, 2002), Montgomery App. No. 19185, 2002-Ohio-4961.
 {¶ 20} The State's evidence demonstrates that when police approached the front door of this residence, a man standing in the doorway yelled, "It's the police," and then momentarily moved to his left out of sight, in the direction of the loveseat, where police found Defendant seated when they entered the residence. As soon as Det. House entered the residence and went to his right he encountered Defendant seated on the right side of the loveseat. Det. House observed Defendant make a furtive movement with her right hand, concealing it between her right leg and the right armrest of the loveseat.
 {¶ 21} After Det. House told Defendant to get on the ground, she removed her concealed hand and smiled at Det. House with a sheepish grin. After Det. House secured Defendant, he lifted the cushion of the loveseat and he discovered three baggies of crack cocaine, where she'd been sitting. The crack cocaine weighted 29.81 grams.
 {¶ 22} This evidence is sufficient to establish constructive possession. Even though no crack cocaine was found on Defendant's person, it was found in close proximity to her under circumstances that tend to indicate she had just placed it there. Barnett, supra; State v. Gordon
(March 29, 1996), Clark App. No. 95CA48. Viewing the evidence in a light most favorable to the State, a rational trier of fact could conclude that all of the elements of the offense, including knowing possession, were proved beyond a reasonable doubt. Defendant's conviction is supported by legally sufficient evidence.
 {¶ 23} Defendant additionally claims that the guilty verdict is against the manifest weight of the evidence because her version of the events conflicted with the testimony by Det. House and the trial court lost its way in finding Det. House more credible than Defendant. We disagree.
 {¶ 24} A weight of the evidence argument challenges the believability of the evidence, and asks which of the competing inferences suggested by the evidence is more believable or persuasive. State v.Hufnagle (Sept. 6, 1996), Montgomery App. No. 15563, unreported. The proper test to apply to that inquiry is the one set forth in State v.Martin (1983), 20 Ohio App.3d 172, 175:
 {¶ 25} "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."
 {¶ 26} Defendant's testimony at trial conflicted with Det. House. Defendant testified that when police entered the residence she was seated on the left side of the loveseat, not the right side. She also testified that she did not make any furtive movements with her right hand, and did not have it shoved down between her right leg and the right armrest, as Det. House testified. Defendant denied knowing about, much less possessing, the drugs found underneath the right side cushion of the loveseat. Defendant admitted, however, that she knew there were drugs in that house, and that she had purchased and used crack cocaine there before police arrived. Defendant also acknowledged previous convictions for drug abuse and welfare fraud.
 {¶ 27} This case was a classic credibility contest between
 {¶ 28} Defendant and the police. The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve. State v. DeHass (1967), 10 Ohio St.2d 230. In Statev. Lawson (August 22, 1997), Montgomery App. No. 16288, we stated:
 {¶ 29} "[b]ecause the factfinder . . . has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." Id., at p. 4.
 {¶ 30} This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of facts lost its way in arriving at its verdict.State v. Bradley (October 24, 1997), Champaign App. No. 97-CA-03.
 {¶ 31} The trial court, sitting as the trier of facts, acted well within its discretion when it elected to believe Det. House rather than Defendant. Moreover, contrary to Defendant's assertion, the photographic evidence that depicts Defendant lying on the floor in front of the loveseat with her feet positioned near the left end and her head next to the right end does not refute Det. House's testimony that Defendant had been seated on the right side of that loveseat.
 {¶ 32} In reviewing this record as a whole, we cannot say that the evidence weighs heavily against a conviction, that the trial court lost its way, or that a manifest miscarriage of justice has occurred. Defendant's conviction is not against the manifest weight of the evidence.
 {¶ 33} Defendant's assignments of error are overruled. The judgment of the trial court will be affirmed.
FAIN, P.J. and YOUNG, J., concur.